Jeffrey T. Thomas, SBN 106409
  jtthomas@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: (949) 451-3800
Facsimile: (949) 451-4220

Sean S. Twomey, SBN 279527
  stwomey@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7284
Facsimile: (213) 229-6284

Christopher J. Renk
  crenk@bannerwitcoff.com
**BANNER & WITCOFF, LTD.**
71 South Wacker Drive, Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

*[Additional Counsel Listed on Signature Page]*

*Attorneys for Plaintiff NIKE, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIKE, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SKECHERS U.S.A., INC., <br><br> Defendant | Case No. 2:19-cv-9230 <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **JURY TRIAL REQUESTED** |

Plaintiff NIKE, Inc. ("NIKE") for its Complaint against Defendant Skechers U.S.A., Inc. ("Skechers") alleges as follows:

**INTRODUCTION**

1. NIKE is the world's leading designer, marketer, and distributor of athletic footwear.

2. NIKE became the industry leader, and maintains that position, by investing heavily in research, design, and development.

3. NIKE's investments in research, design, and development have led to many innovative footwear technologies, including technologies at issue in this case.

4. NIKE has taken steps to protect and defend its innovative footwear technologies, including by obtaining and enforcing utility patents around the world.

5. NIKE's intellectual property rights, including its utility patents, are important to its brand, its success, and its competitive position.

6. Skechers also markets and distributes footwear.

7. Instead of innovating its own designs and technologies, Skechers' business strategy includes copying its competitors' designs and using innovative technologies developed by others to gain market share. As one commentator explained, "it's hard to mask that [Skechers] is a copy-cat" that "has blatantly knocked off" the popular products of others. (https://sneakernews.com/2016/07/11/skechers-knockoff-shoes/.)

8. Skechers often copies NIKE's innovative designs and technologies.

9. NIKE files this lawsuit because Skechers is infringing certain of NIKE's utility patents directed to NIKE's innovative Air and footwear cushioning technologies. In particular, Skechers is using NIKE's patented technology in at least its Skech-Air Jumpin' Dots shoes and its Skech-Air Mega shoes shown below.

| Skech-Air Jumpin' Dots | Skech-Air Mega |
|---|---|
|  | |

10. This is not the first time Skechers has infringed NIKE's intellectual property rights. This is the fourth lawsuit in a series of lawsuits that NIKE, and its subsidiary Converse Inc., have filed against Skechers asserting a range of intellectual property rights. It started with Skechers using an iconic Converse trademark on its shoes, then Skechers copied patented designs of several successful NIKE shoes, and now Skechers is using NIKE's patented footwear technologies.

11. The first matter is an investigation Converse initiated at the U.S. International Trade Commission ("ITC") against Skechers and others for infringing Converse's trademark rights in the midsole configuration Converse has used on its Chuck Taylor All Star shoes since 1932. *In the Matter of Certain Footwear Products*, USITC Inv. No. 337-TA-936. The investigation is still pending at the ITC. The illustrations below show an authentic Converse All Star shoe next to an example Skechers' shoe that bears an identical midsole configuration.

| Converse All Star Shoe | Skechers' Shoe |
|---|---|

2

12. The second matter is a design patent lawsuit styled *NIKE, Inc. v. Skechers U.S.A., Inc.*, Case No. 2:17-cv-08509-JAK (Ex). NIKE filed that lawsuit to stop Skechers' infringements of NIKE's patented NIKE Free and Flyknit designs. The lawsuit is still pending in this Court. The illustrations below show examples of NIKE's patented designs next to examples of Skechers' shoes at issue in that lawsuit.

| NIKE Patented Designs | Skechers' Shoes |
|---|---|
| (FIG. 2) | |
| (FIG. 2) | |

13. Skechers responded to the second matter by, in part, filing fifteen separate petitions for *inter partes* review with the Patent Office's Patent Trial & Appeal Board ("PTAB") attacking the patentability of NIKE's designs. The PTAB rejected all of Skechers' challenges. That is, the PTAB upheld the patentability of NIKE's Free and Flyknit designs fifteen separate times.

14. The third matter is a design patent lawsuit styled *NIKE, Inc. v. Skechers U.S.A., Inc.*, Case No. 2:19-cv-08418-JAK-E. NIKE filed that lawsuit to stop Skechers' infringements of NIKE's patented VaporMax and Air Max 270 designs. The lawsuit is still pending in this Court. The illustrations below show examples of NIKE's patented designs next to examples of Skechers' shoes at issue in that lawsuit.



| NIKE Patented Designs | Skechers' Shoes |
|---|---|

15. Skechers responded to the third matter by publishing the following "letter" in which it accuses NIKE of stifling competition and bullying:



4

16. Skechers did not deny in its "letter" that its business strategy includes copying competitor designs and technologies to gain market share. Skechers did not deny in its "letter" that it often copies NIKE's innovative designs and technologies. Instead, Skechers' response appears to be that its unlawful business practices are acceptable because it sometimes gets away with it, arguing that NIKE "does not always prevail" when challenging Skechers' copying.

17. But Skechers' statement in its "letter" that the ITC ruled Skechers' Twinkle Toes and Bobs styles do not infringe Converse's trademark in the Chuck Taylor midsole design is only part of the story of that dispute. The ITC also found in the same opinion that other Skechers' shoes have midsole designs that are identical or nearly identical to Converse's Chuck Taylor midsole design. In any event, that investigation is still pending at the ITC.

18. NIKE's enforcement of its intellectual property rights against infringers, including copyists like Skechers, is not bullying and it does not stifle competition. The opposite is true. Intellectual property rights are fundamental rights. The founders of our nation included intellectual property rights in the Constitution to "promote the progress of science and useful arts." These rights encourage companies like NIKE and the talented inventors who work at the Company, to engage in the creative, difficult and resource-intensive endeavor of innovation. If companies like NIKE cannot defend their innovation—and if companies like Skechers are permitted to build multi-billion dollar businesses on the backs of creators and innovators by copying designs and technologies year-after-year—it stifles innovation and competition for businesses both big and small.

19. The marketplace appears to understand this. Skechers posted its "letter" to Twitter where consumers called-out Skechers for copying. Below are just a few examples of the many comments posted in response to Skechers' "letter."

**Thomas Brillon** @iamtombrillon · Oct 14
Replying to @SKECHERSUSA
Ok those are literally vapormax and AM270s lmao

💬   ↻ 1   ♡ 9

**Tyler** @badtylerfly · Oct 14
Replying to @SKECHERSUSA
Lol "we ripped them off now they're BULLYING US!"

💬   ↻   ♡ 11

**MelanieMercedes** @MercedesMel_ · Oct 14
Replying to @SKECHERSUSA
Mmaaannnn ya been copying Nike for YEARS. Stop it.
Mmaaannnn ya been copying Nike for YEARS. Stop it.

💬   ↻   ♡ 3

**F. Carlos** @fc1114 · Oct 14
Replying to @SKECHERSUSA
Everything made by Skechers is a stolen design 😡😡

💬   ↻   ♡ 3

**Big_L** @Big_L · Oct 14
Replying to @SKECHERSUSA
you really said, "…rather than compete in the market place."

how about you come up with your own technology and design instead of stealing Nike's.

Nike isn't "bullying" you, they're just standing up against theives.

💬   ↻   ♡ 1

**Matthew McGnarly** @MatthewMcGnarly · Oct 14
Replying to @SKECHERSUSA
You all couldnt be any more blatant with your Ripoffs. It's sad honestly. you are still a giant in the game. Stick to your demographic. Copying literally every single one of nikes shoes, wont help you. You cannot take their fans and supporters with your farrrr inferior products

💬   ↻   ♡ 1

6

20. Indeed, Skechers thumbs it nose at fair competition. Skechers' CEO, Robert Greenberg, gives orders to knock-off competitor products, Skechers uses code words in its internal copying documents to attempt to shield the documents from discovery in litigation, and Skechers' employees are ordered to make "exact copies" of competitor shoes. *See, e.g., adidas Am., Inc. v. Skechers USA, Inc.*, No. 3:15-CV-01741-HZ, 2017 WL 3319190, at *12 (D. Or. Aug. 3, 2017).

21. NIKE will continue to defend its innovations and stop Skechers from free-riding on NIKE's significant investment of talent and resources that are deployed to innovate.

**THE PARTIES**

22. NIKE is a corporation organized under the laws of the State of Oregon with a principal place of business at One Bowerman Drive, Beaverton, Oregon 97005.

23. Skechers is a corporation organized under the laws of the State of Delaware with a principal place of business at 228 Manhattan Beach Boulevard, Manhattan Beach, California 90266.

**JURISDICTION AND VENUE**

24. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 100 *et seq*. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

25. This Court has personal jurisdiction over Skechers because Skechers maintains its headquarters and principal place of business in this District. This Court also has personal jurisdiction over Skechers because Skechers regularly solicits and conducts business in this District and engages in other persistent courses of conduct in this District. This Court also has personal jurisdiction over Skechers because Skechers derives substantial revenue from goods and services sold to persons or entities in this District and commits acts of infringement in this District, including but not limited to making, using, offering to sell, selling, and/or importing products that infringe one or more claims of NIKE's patents at issue in this lawsuit.

26. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400 because Skechers maintains a regular and established place of business in this District and has committed, and continues to commit, acts of infringement in this District, including but not limited to making, using, offering to sell, selling, and/or importing products that infringe one or more claims of NIKE's patents at issue in this lawsuit.

## FACTUAL BACKGROUND

27. NIKE owns all right, title, and interest in, and has the right to sue and recover for past, present, and future infringement of, U.S. Patent No. 7,401,420 (the "'420 patent").

28. The U.S. Patent Office duly and legally issued the '420 patent on July 22, 2008. A true and correct copy of the '420 patent is attached as Complaint Exhibit A.

29. The '420 patent is presumed to be valid.

30. NIKE owns all right, title, and interest in, and has the right to sue and recover for past, present, and future infringement of, U.S. Patent No. 10,098,412 (the "'412 patent").

31. The U.S. Patent Office duly and legally issued the '412 patent on October 16, 2018. A copy of the '412 patent is attached as Complaint Exhibit B.

32. The '412 patent is presumed to be valid.

33. Without NIKE's authorization, Skechers has made, used, offered for sale, sold, and/or imported into the United States shoes the practice the claimed inventions of the '420 patent and/or the '412 patent.

34. Skechers' shoes that infringe claims of the '420 patent include at least the Skech-Air Jumpin' Dots shoes with model number 81594 (the "Skech-Air Jumpin' Dots") and the Skech-Air Mega shoes with model numbers 97738 and 97739 (the "Skech-Air Mega").

35. Skechers' shoes that infringe the '412 patent include at least the Skech-Air Jumpin' Dots.

36. The Skech-Air Jumpin' Dots and the Skech-Air Mega are collectively referred to in this Complaint as the Infringing Shoes.

37. On information and belief, Skechers sells and offers to sell the Infringing Shoes directly to end-user customers through its e-commerce websites and its own retail stores, as well as to third-party resellers, such as department and specialty stores, through its wholesale distribution channel.

38. On information and belief, Skechers sells and offers to sell the Infringing Shoes directly to end-user customers in the United States, including in this District. Likewise, on information and belief, third-party resellers sell and offer to sell the Infringing Shoes in the United States, including in this District.

39. Skechers has infringed, and continues to infringe, the '420 patent and the '412 patent by making, using, selling, offering to sell, and/or importing at least the Infringing Shoes in this District and elsewhere in the United States without the consent or authorization of NIKE.

**FIRST CLAIM FOR RELIEF**
**(INFRINGEMENT UNDER 35 U.S.C. § 271(A) OF THE '420 PATENT)**

40. NIKE re-alleges and incorporates by reference the allegations set forth in paragraphs 1–39 of this Complaint.

41. Skechers directly infringes at least claims 14, 15, 16, and 17 of the '420 patent.

42. The Infringing Shoes satisfy each and every limitation of claim 14 of the '420 patent because they are articles of footwear comprising: a sole structure incorporating a fluid-filled bladder and a reinforcing structure secured to the bladder, the sole structure having an upper surface and an opposite lower surface, the upper surface forming a ridge that defines a first portion of a lasting surface, at least a portion of the ridge being an inclined surface formed by the reinforcing structure and located over the bladder, the bladder defining a second portion of the lasting surface;

and an upper secured directly to the first portion of the lasting surface and the second portion of the lasting surface.

43. The Infringing Shoes satisfy each and every limitation of claim 15 of the '420 patent because they are articles of footwear as recited above in paragraph 42 and the bladder is a single chamber that extends through substantially all of a length of the sole structure.

44. The Infringing Shoes satisfy each and every limitation of claim 16 of the '420 patent because they are articles of footwear as recited above in paragraph 42 and an adhesive directly bonds the bladder and the reinforcing structure to the upper.

45. The Infringing Shoes satisfy each and every limitation of claim 17 of the '420 patent because they are articles of footwear as recited above in paragraph 42 and the ridge extends along a medial side of the sole structure, along a lateral side of the sole structure, and around a heel region of the sole structure.

46. On information and belief, Skechers' infringement of the '420 patent has been willful, intentional, and deliberate, at least as of the filing date of this complaint. Skechers knew or should have known that continuing to make, use, offer to sell, sell, and/or import the Infringing Shoes into the United States would directly infringe the '420 patent, yet Skechers infringed and continues to infringe the '420 patent.

47. As a result of Skechers' direct infringement of the '420 patent, NIKE has suffered irreparable harm and damages.

48. NIKE has no adequate remedy at law for Skechers' infringements of the '420 patent.

49. On information and belief, Skechers' infringements of the '420 patent will continue unless enjoined by this Court.

**SECOND CLAIM FOR RELIEF**
**(INFRINGEMENT UNDER 35 U.S.C. § 271(A) OF THE '412 PATENT)**

50. NIKE re-alleges and incorporates by reference the allegations set forth in paragraphs 1–39 of this Complaint.

51. Skechers directly infringes at least claims 1-7 of the '412 patent.

52. The Skech-Air Jumpin' Dots shoes satisfy each and every limitation of claim 1 of the '412 patent because they are articles of footwear comprising: an upper; an outsole secured to the upper; a cavity disposed between the upper and the outsole; a plurality of protrusions extending within the cavity toward the upper from a base end disposed adjacent to the outsole to a distal end disposed within the cavity, the plurality of protrusions (i) extending from a forefoot region proximate to a forward-most edge of the article of footwear to a midfoot region of the article of footwear, (ii) being [sp]aced apart from one another along a longitudinal axis of the article of footwear within the forefoot region, and (iii) including a first protrusion located proximate to the midfoot region and having a height that is greater than a height of the other protrusions of the plurality of protrusions disposed between the first protrusion and the forward-most edge of the article of footwear; and a plurality of foam beads disposed in the cavity, at least a portion of the plurality of foam beads being disposed at a base of the first protrusion.

53. The Skech-Air Jumpin' Dots shoes satisfy each and every limitation of claim 2 of the '412 patent because they are articles of footwear as recited above in paragraph 52 and the first protrusion is located closer to a heel region of the article of footwear than the other protrusions of the plurality of protrusions.

54. The Skech-Air Jumpin' Dots shoes satisfy each and every limitation of claim 3 of the '412 patent because they are articles of footwear as recited above in paragraph 52 and the plurality of protrusions progressively decrease in height from the first protrusion to the forward-most edge of the article of footwear.

55. The Skech-Air Jumpin' Dots shoes satisfy each and every limitation of claim 4 of the '412 patent because they are articles of footwear as recited above in paragraph 52 and the plurality of foam beads is disposed within the cavity between the first protrusion and a rearward-most edge of the article of footwear.

56. The Skech-Air Jumpin' Dots shoes satisfy each and every limitation of claim 5 of the '412 patent because they are articles of footwear as recited above in paragraph 52 and the cavity is substantially filled with the plurality of foam beads between the first protrusion and the rearward-most edge.

57. The Skech-Air Jumpin' Dots shoes satisfy each and every limitation of claim 6 of the '412 patent because they are articles of footwear as recited above in paragraph 52 and the plurality of foam beads substantially fills the cavity at a heel region of the article of footwear disposed between the midfoot region and a rearward-most edge of the article of footwear.

58. The Skech-Air Jumpin' Dots shoes satisfy each and every limitation of claim 7 of the '412 patent because they are articles of footwear as recited above in paragraph 52 and the cavity is substantially filled with the plurality of foam beads.

59. On information and belief, Skechers' infringement of the '412 patent has been willful, intentional, and deliberate, at least as of the filing date of this complaint. Skechers knew or should have known that continuing to make, use, offer to sell, sell, and/or import the Skech-Air Jumpin' Dots shoes into the United States would directly infringe the '412 patent, yet Skechers infringed and continues to infringe the '412 patent.

60. As a result of Skechers' direct infringement of the '412 patent, NIKE has suffered irreparable harm and damages.

61. NIKE has no adequate remedy at law for Skechers' infringements of the '412 patent.

62. On information and belief, Skechers' infringement of the '412 patent will continue unless enjoined by this Court.

## JURY DEMAND

63. Pursuant to Federal Rule of Civil Procedure 38(b), NIKE hereby demands a trial by jury of all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, NIKE respectfully prays for:

A. A judgment and order that Skechers has infringed the '420 patent and the '412 patent by making, using, offering to sell, selling, and/or importing its infringing shoes into the United States;

B. A judgment and order permanently enjoining Skechers and its affiliates, officers, agents, employees, attorneys, and all other persons acting in concert with Skechers, from infringing the '420 patent and the '412 patent;

C. A judgment and order requiring Skechers to pay NIKE damages adequate to compensate NIKE for Skechers' infringements of the '420 patent and the '412 patent pursuant to 35 U.S.C. § 284, including increased damages up to three times the amount found or assessed pursuant to 35 U.S.C. § 284;

D. A judgment and order requiring Skechers to pay NIKE supplemental damages or profits for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed;

E. A judgment and order requiring Skechers to pay NIKE pre-judgment and post-judgment interest on any damages or profits awarded;

F. A determination that this action is an exceptional case pursuant to 35 U.S.C. § 285;

G. An award of NIKE's attorneys' fees for bringing and prosecuting this action;

H. An award of NIKE's costs and expenses incurred in bringing and prosecuting this action; and

I. Such further and additional relief as this Court deems just and proper.

Dated: October 28, 2019

                    GIBSON, DUNN & CRUTCHER LLP

              By: /s/ Jeffrey T. Thomas

                  Jeffrey T. Thomas, SBN 106409
                    jtthomas@gibsondunn.com
                  Sean S. Twomey, SBN 279527
                    stwomey@gibsondunn.com
                  GIBSON, DUNN & CRUTCHER LLP
                  3161 Michelson Drive
                  Irvine, CA 92612
                  Telephone: (949) 451-3800
                  Facsimile: (949) 451-4220

                  Christopher J. Renk (*pro hac vice* to be filed)
                    crenk@bannerwitcoff.com
                  Michael J. Harris (*pro hac vice* to be filed)
                    mharris@bannerwitcoff.com

                  BANNER & WITCOFF, LTD
                  71 South Wacker Drive, Suite 3600
                  Chicago, IL 60606
                  Telephone: (312) 463-5000
                  Facsimile: (312) 463-5001

                  *Attorneys for Plaintiff NIKE, Inc.*